Denis Stearns, State Bar No. 1020675
William D. Marler, WSBA #17233
bmarler@marlerclark.com
MARLER CLARK, LLP PS
701 First Avenue, Suite 6600
Seattle, WA 98104
Tel. (206) 346-1888
Fax (206) 346-1898
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID ZIENTEK, a minor child, And CAROLINE ZIENTEK, a Minor child, and their parents, ANNA ZIENTEK and PAUL ZIENTEK<br><br>Plaintiffs,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., A Delaware corporation; NATURAL SELECTION FOODS, LLC; a California corporation; and NATURAL SELECTION FOODS MANUFACTURING, LLC, a California corporation,<br><br>Defendants. | NO. 06 cv 977<br><br>FIRST AMENDED COMPLAINT |

COMES NOW the plaintiffs, DAVID and CAROLINE ZIENTEK, minor children, and their parents ANNA and PAUL ZIENTEK, by and through their attorneys of record, the MARLER CLARK law firm, and alleges as follows:

## I. PARTIES

1.1     The plaintiffs are residents of Milwaukee, Wisconsin. The plaintiffs reside within the jurisdiction of this Court.

1.2     The defendant Dole Food Company, Inc. ("Dole") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, on information and belief, in the State of California. The defendant Dole is, therefore, a foreign corporation and not a resident of the State of Wisconsin. Further, the defendant Dole is authorized to do, and in fact does, business in the State of Wisconsin.

1.3     The defendant Natural Selection Foods, LLC, is a corporation organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods, LLC, is, therefore, a foreign corporation and not a resident of the State of Wisconsin. Further, the defendant Natural Selection Foods, LLC, is authorized to do, and in fact does, business in the State of Wisconsin.

1.4     The defendant Natural Selection Foods Manufacturing, LLC, is a corporation organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in the State of California. The defendant Natural Selection Foods Manufacturing, LLC, is, therefore, a foreign corporation and not a resident

of the State of Wisconsin. Further, the defendant Natural Selection Foods Manufacturing, LLC,[1] is authorized to do, and in fact does, business in the State of Wisconsin.

## II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendants each have certain minimum contacts with the State of Wisconsin such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2 Venue in the United States District Court for the Eastern District of Wisconsin is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims and causes of action occurred in this judicial district, and because the defendants Natural Selection and Dole were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### The Outbreak

3.1 *E. coli* O157:H7 outbreaks associated with lettuce or spinach, specifically the "pre-washed" and "ready-to-eat" varieties sold under various brand and trade names, are by no means a new phenomenon. In October 2003, 13 residents of a California retirement center were sickened and 2 died after eating *E. coli*-contaminated "pre-washed" spinach. In September 2003, nearly 40 patrons of a California restaurant chain became ill after eating salads prepared with bagged, "pre-washed" lettuce. In July 2002, over 50 young women were stricken with *E. coli* at a dance camp after eating "pre-washed" lettuce, leaving several

---

[1] Defendants Natural Selection Foods, LLC, and Natural Selection Foods Manufacturing, LLC, will hereinafter be referred to, collectively, as "Natural Selection."

hospitalized, and 1 with life-long kidney damage. The Center for Science in the Public Interest found that of 225 food-poisoning outbreaks from 1990 to 1998, nearly 20 percent (55 outbreaks) were linked to fresh fruits, vegetables or salads.

3.2     Even more recently, though—September 2005—the defendant Dole's pre-washed lettuce was the cause of a large *E. coli* O157:H7 outbreak in Wisconsin, Minnesota, and Oregon. Health authorities involved in the investigation of last fall's Dole *E. coli* outbreak estimated that as many as 244,866 bags of potentially contaminated lettuce made it to market. Many people were critically injured.

### The Zientek Children's Injuries

3.3     Anna Zientek purchased a package of Dole brand baby spinach on or about August 25, 2006, from a Pick N Save grocery store in Milwaukee, Wisconsin. David and Caroline Zientek consumed the spinach in salads between August 26 and August 29, 2006.

3.4     David Zientek's gastrointestinal symptoms began on Saturday, September 2, 2006. Caroline Zientek's symptoms began the next day, September 3. Symptoms for both children included frequent diarrhea, abdominal cramping, and general malaise.

3.5     On Tuesday, September 5, 2006, Caroline Zientek's symptoms became much worse, and early Wednesday morning, Anna Zientek rushed her daughter Caroline to Children's Hospital of Wisconsin. Caroline Zientek was admitted to the hospital the same day.

3.6     By Friday, September 8, 2006, David Zientek had grown severely ill. The following day, tests done at Children's Hospital showed that he had developed hemolytic uremic syndrome, an often lethal condition commonly associated with *E. coli* O157:H7. David Zientek was admitted to Children's Hospital soon after.

3.7     Caroline Zientek's laboratory values soon showed that she, too, had developed hemolytic uremic syndrome. As of Sunday, September 17, she remained hospitalized with the condition. David Zientek was finally discharged on Thursday, September 14, 2006. Both children's *E. coli* O157:H7 infections have been confirmed by stool culture.

## IV. CAUSES OF ACTION

### Strict Liability—Count I

4.1     At all times relevant hereto, the defendants were manufacturers and sellers of the adulterated food product that is the subject of the action.

4.2.    The adulterated food product that the defendants manufactured, distributed, and/or sold was, at the time it left the defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained *E. coli* O157:H7, a deadly pathogen.

4.3     The adulterated food product that the defendants manufactured, distributed, and/or sold was delivered to the plaintiffs without any change in its defective condition. The adulterated food product that the defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by plaintiffs David and Caroline Zientek.

4.4     The defendants owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendants breached this duty.

4.5     The defendants owned a duty of care to the plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendants breached this duty.

4.6     Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendants manufactured, distributed, and/or sold.

### Breach of Warranty—Count II

4.7     The defendants are liable to the plaintiffs for breaching express and implied warranties that they made regarding the adulterated product that the plaintiffs purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, the defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

4.8     Plaintiffs allege that the *E. coli*-contaminated food that the defendants sold to plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.9     Plaintiffs allege that the *E. coli*-contaminated food that the defendants sold to plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.10    As a direct and proximate cause of the defendants' breach of warranties, as set forth above, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

## Negligence—Count III

4.11   The defendants owed to the plaintiffs a duty to use reasonable care in the manufacture, distribution, and sale of their food product, the breach of which duty would have prevented or eliminated the risk that the defendants' food products would become contaminated with *E. coli* O157:H7 or any other dangerous pathogen. The defendants breached this duty.

4.12   The defendants had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent. The plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.13   The defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure their respective employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but the defendants failed to do so and were therefore negligent.

4.14   The defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendants failed to do so and were therefore negligent.

4.15   As a direct and proximate result of the defendants' acts and omissions of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

## Negligence Per Se—Count IV

4.16   The defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq*.

4.17   The defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, and sale of food adulterated with *E. coli* O157:H7, a deadly pathogen.

4.18   As a direct and proximate result of conduct by the defendants that was negligent *per se*, the plaintiffs sustained injury and damages in an amount to be determined at trial.

## DAMAGES

4.19   The plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **JURY DEMAND**

The plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for judgment against the defendants as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiffs as a result of the defendants' conduct;

B. Awarding plaintiffs their reasonable attorneys fees and costs, to the fullest extent allowed by law; and

C. Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: September 16, 2006.

MARLER CLARK, LLP, PS

*[signature]*

Denis W. Stearns, Esq.
State Bar No. 1020675

William D. Marler, WSBA #17233
(pending admission pro hac vice)

Attorneys for Plaintiffs